UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: GARY MILLS, JR.　　　　　　　　　　　　CASE NO. 10-11036-DWH
　　　　　　　　　　　　　　　　　　　　　　　　CHAPTER 7

GUARANTY BANK & TRUST COMPANY　　　　　PLAINTIFF/CREDITOR

VERSUS　　　　　　　　　　　　　　　　　　　ADV. PROC. NO. 10-1097-DWH

GARY MILLS, JR.　　　　　　　　　　　　　　　DEFENDANT/DEBTOR

OPINION

On consideration before the court is a complaint, filed by the plaintiff/creditor, Guaranty Bank & Trust Company ("Guaranty Bank"), seeking a determination that certain debts owed by the defendant/debtor, Gary Mills, Jr., ("Mills"), are non-dischargeable; an answer and affirmative defenses having been filed by Mills; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

II.

FACTUAL SUMMARY

Mills entered into four loan transactions with Guaranty Bank that are pertinent to this proceeding. Details relevant to these loan transactions are set forth as follows:

A. On March 21, 2008, Mills executed a promissory note, commercial security agreement, and agreement to provide insurance in order to borrow $8,170.00. The collateral for this loan was a 2008 Sportsman 1680 duck boat (Serial No. - PLR48794K708), a 2007 Yamaha 50 horsepower outboard motor (Serial No. - 6H5KL-1019797), and a 2008 Trailmaster boat trailer (VIN No.- 45JA4DN118100346). Guaranty Bank perfected its security interest in the aforementioned collateral.

B. On May 5, 2009, Mills executed a promissory note, commercial security agreement, and an agreement to provide insurance in order to borrow $19,698.00. The collateral for this loan was an X Mark zero turn mower (Serial No. - LAS528KA604-712158), a 2007 Polaris Ranger 700 (Serial No. - 4XARH68AX7D043464), a 2008 Sportsman 1680 duck boat (Serial No. - PLR48794K708), a 2007 Yamaha 50 horsepower outboard motor (Serial No. - 6H5KL-1019797), and a 2008 Trailmaster boat trailer (VIN No. 45JA4DN118100346). Guaranty Bank perfected its security interest in the aforementioned collateral. The Sportsman duck boat, the Yamaha outboard motor, and the 2008 Trailmaster boat trailer, as noted hereinabove, were pledged as collateral for the loan transaction that Mills entered into on March 21, 2008.

C. On April 27, 2009, Mills executed a promissory note, commercial security agreement, and an agreement to provide insurance in order to borrow $13,300.00. The collateral for this loan was a 2004 Toyota Sienna mini-van (VIN No. - 5TDZA22C34S040891). Guaranty Bank perfected its security interest in the aforementioned collateral.

D. On July 2, 2009, Mills executed a promissory note, commercial security agreement, and an agreement to provide insurance in order to borrow $20,984.00. The collateral for this loan was a 2004 Toyota 4 Runner (VIN No. - JTEZU14R440029982), a 24 foot Rivertrail trailer, a 2006 Delta marsh boat (Serial No. - EHT2W056D606), and a 2006 Yamaha OD (Serial No. - 63PL1037580). Guaranty Bank perfected its security interest in the Rivertrail trailer, the 2006 Delta marsh boat, and the 2006 Yamaha OD.

On July 27, 2009, Mills reported that the 2008 Sportsman 1680 duck boat, the 2007 Yamaha 50 horsepower outboard motor, and the 2008 Trailmaster boat trailer had been stolen. After filing an insurance claim, Mills was paid by State Farm Fire and Casualty Company the sum of $13,300.00 on August 6, 2009, as compensation for this loss. Mills, however, did not remit these funds to Guaranty Bank. As mentioned hereinabove, these three items were the only collateral securing the loan dated March 21, 2008, and were three of the five items of collateral securing the loan dated May 5, 2009.

On December 2, 2009, the 2004 Toyota Sienna mini-van burned in a serious accident while being driven by Mills' wife. After filing an insurance claim, Mills was paid by Stonington Insurance

3

Company on January 8, 2010, in the sum of $17,500.00 as compensation for this loss. Mills, however, failed to remit the insurance proceeds to Guaranty Bank.

In its complaint, Guaranty Bank asserts that it never released its lien on any of the aforementioned collateral, and it accuses Mills of willfully, maliciously, and fraudulently converting the two insurance checks which should have been utilized to reduce the debts that he owed to the bank. In addition, Guaranty Bank asserts that Mills failed to deliver the title to the 2004 Toyota 4 Runner to the bank so that the bank could perfect its security interest in the vehicle. Mills disputes the bank's claim that he refused to deliver title to the 2004 Toyota 4 Runner. To the contrary, Mills asserts that the bank did have a lien on this vehicle, but voluntarily released the lien when Mills sold the vehicle to a third party.

Mills admits that he did not remit the insurance proceeds to the bank, but asserts that he had justification for not doing so. In the pre-trial order, Mills also admits that he sold the 2006 Delta marsh boat for approximately $9,000.00, without remitting the proceeds to Guaranty Bank. The court will deal with each of these issues more specifically hereinbelow.

III.

AGREED STIPULATION OF FACTS

In the pre-trial order, entered in this case on June 17, 2011, Guaranty Bank and Mills stipulated to the following facts:

    (a)    On March 21, 2008, Mills entered into a Promissory Note, Commercial Security Agreement, and Agreement to Provide Insurance in order to borrow $8,170.00 and pledged as collateral a 2008 Sportsman 1680 Duckboat (serial number: PLR48794K708), a 2007 Yamaha 50hp Outboard (serial number: 6H5KL-1019797), and a 2008 Trailmaster Boat Trailer (VIN number: 45JA4DN118100346).

4

Guaranty Bank proceeded to perfect its security interest in the aforementioned property.

(b) On May 5, 2009, Mills entered into a Promissory Note, Commercial Security Agreement, and Agreement to Provide Insurance in order to borrow $19,698.00 and pledged as collateral a X Mark Zero Turn Mower (serial number: LAS528KA604-712158), a 2007 Polaris Ranger 700 (serial number: 4XARH68AX7D043464), 2008 Sportsman 1680 Duckboat (serial number: PLR48794K708), a 2007 Yamaha 50hp Outboard (serial number 6H5KL-1019797), and a 2008 Trailmaster Boat Trailer (VIN number: 45JA4DN118100346). Guaranty Bank proceeded to perfect its security interest in the aforementioned property.

(c) On July 27, 2009, Mills reported that his boat, motor and trailer had been stolen. As a result of this report, Mills was tendered payment by State Farm Fire and Casualty Company on August 6, 2009 in the amount of $13,300.00 on Claim No. 24-Q144-998. Mills has failed to fulfill his obligations under the Promissory Notes, Commercial Security Agreements, and Agreements to Provide Insurance. Mills failed to tender the insurance proceeds to Guaranty Bank, nor has Guaranty Bank released its security interest in any of the aforementioned property.

(d) On April 27, 2009, Mills entered into a Promissory Note, Commercial Security Agreement, and Agreement to Provide Insurance in order to borrow $13,300.00 and pledged as collateral a 2004 Toyota Sienna Mini Van (VIN number: 5TDZA22C34S040891). Guaranty Bank proceeded to perfect its security interest in the aforementioned property.

(e) On December 2, 2009, the 2004 Toyota Sienna Mini Van burned. Mills was tendered payment by Stonington Insurance Company on January 8, 2010 in the amount of $17,500.00 on Claim No. KBST09120015 for the loss of his van. Mills has failed to fulfill his obligations under the Promissory Note, Commercial Security Agreement, and Agreement to Provide Insurance. Mills failed to tender the insurance proceeds to Guaranty Bank, nor has Guaranty Bank released its security interest in the aforementioned property.

(f) On July 2, 2009, Mills entered into a Promissory Note, Commercial Security Agreement, and Agreement to Provide Insurance in order to borrow $20,984.00 and pledged as collateral a 2004 Toyota 4 Runner

(VIN number: JTEZU14R440029982), a 24' Rivertrail Trailer, a 2006 Delta Marsh Boat (serial number EHT2W056D606), and a 2006 Yamaha OD (serial number: 63PL1037580). Guaranty Bank proceeded to perfect its security interest in the 24' Rivertrail Trailer, the 2006 Delta Marsh Boat (serial number: EHT2W056D606), and the 2006 Yamaha OD (serial number: 63PL1037580). Mills has failed to fulfill his obligations under the Promissory Note, Commercial Security Agreement, and Agreement to Provide Insurance.

IV.

DISCUSSION

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt resulting from a willful and malicious injury caused by the debtor to another entity or to the property of another entity. The Fifth Circuit Court of Appeals articulated its standard for the application of § 523(a)(6) in *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598 (5th Cir. 1998). The court concluded that an injury is "willful and malicious" where the debtor's conduct would cause injury according to an objective substantial certainty of harm standard or upon a showing that the debtor had a subjective motive to cause harm. *Id.* at 606; *see also Pharr v. Ford (In re Ford)*, 276 B.R. 561, 564 (Bankr. N.D. Miss.2001).

Some courts have taken a more narrow approach to excepting debts from discharge pursuant to § 523(a)(6) than that adopted by the Fifth Circuit. These decisions essentially hold that for a debtor's conduct to bring a debt within the discharge exception for willful and malicious injury that the debtor must will or desire the harm, or believe that the injury is substantially certain to occur as a result of his behavior. *See In re Markowitz*, 190 F.3d 455 (6th Cir. 1999); *Carrillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir. 2002); and *Thiara v. Spycher Brothers (In re Thiara)*, 285 B.R. 420 (BAP 9th Cir. 2002). These cases reject the objective substantial certainty of harm standard, adopted by

the Fifth Circuit in *Miller*, in favor of a completely subjective standard which requires proof of the debtor's intent.

The following discussion reflects that Mills intentionally refused to remit the insurance proceeds and the marsh boat sales proceeds to Guaranty Bank, as well as, that he clearly understood that his actions would have an adverse economic impact on the bank.

At the time of the trial, the four loans had the following payoff balances:

A.   Loan dated March 21, 2008 - $2,907.33

B.   Loan dated May 5, 2009 -   $22,238.05

C.   Loan dated April 27, 2009 - $11,917.60

D.   Loan dated July 2, 2009 -   $22,201.54

Insofar as the conversion of the $13,300.00 in insurance proceeds which were related to the loss of the duck boat, outboard motor, and trailer, Mills testified that he had paid off the loan secured by these items of collateral and, therefore, should not be liable for his conversion of the insurance proceeds. During his courtroom testimony, Mills spoke only of one loan. As noted hereinabove, the duck boat, outboard motor, and trailer served as collateral for two loans, both of which had been entered into prior to the theft. The undisputed evidence indicated that the first loan has a payoff of $2,907.33, and the second loan, which was secured by two other items of collateral, has a payoff of $22,238.05.

In addition to the duck boat, outboard motor, and trailer, the second loan, entered into on May 5, 2009, was secured by an X Mark mower and a 2007 Polaris Ranger 700. Since this is a Chapter 7 bankruptcy case, the court is of the opinion and will order sua sponte that the automatic stay be immediately lifted and that the X Mark mower and the 2007 Polaris Ranger be abandoned from the

7

bankruptcy estate. Guaranty Bank should thereafter repossess and liquidate these two items of collateral and report to the court as to the balance remaining on this loan following the application of the proceeds received from the liquidation. The balance, if any, will be considered a non-dischargeable debt because of the conversion of the $13,300.00 in insurance proceeds. This amount will be added to the unpaid balance of the first loan in the sum of $2,907.55, also secured by the stolen items, which shall additionally be a non-dischargeable debt. Should the liquidation of the two items of collateral generate enough funds to satisfy the balances of both loans, the underlying debts will be considered satisfied and discharged. The maximum amount of the non-dischargeable debt related to the first and second loans, however, shall not exceed $13,300.00, plus interest at the state law judgment rate accruing after August 6, 2009.

The third loan, dated April 27, 2009, was secured by the 2004 Toyota Sienna mini-van, which was destroyed in a serious accident occurring on December 2, 2009. As justification for his converting the $17,500.00 insurance proceeds check, which was received on January 8, 2010, Mills testified that Guaranty Bank had failed to honor a stop payment notice, which he requested, on an unrelated $19,000.00 check that he had issued to his floor plan lender with whom he was involved in a dispute. Since Guaranty Bank had no representative to testify at the trial, the circumstances related to Mills' stop payment notice and the presentment of the $19,000.00 check were somewhat unclear. However, it appears that the bank did honor Mills' check by paying the floor plan lender, but did not initially deduct the proceeds of the check from Mills' bank account. Several weeks later, the bank reversed its initial decision and deducted $19,000.00 from his account. Mills stated that since the bank had ultimately refused to honor his stop payment notice, that he should be able to retain the insurance proceeds as an offset. While the bank may eventually be liable to Mills for not

8

honoring the stop payment notice, that is an issue to be decided by another court in another proceeding. The bank's action cannot be used as justification for converting the insurance proceeds which were clearly earmarked to replace the destroyed collateral as provided in the documentation that was executed by Mills in connection with this loan transaction. As such, the balance of the loan secured by the mini-van in the sum of $11,917.60 is a non-dischargeable debt. However, should Guaranty Bank be found liable to Mills for not appropriately honoring his stop payment notice, then the amount of damages should be offset against the non-dischargeable obligation that Mills owes to Guaranty Bank.

As to the fourth loan, dated July 2, 2009, which has a payoff balance of $22,201.54, there was little evidence presented at trial that would indicate that this obligation was a non-dischargeable debt. Insofar as the 2004 Toyota 4 Runner is concerned, Mills' testimony supported his contention in the pre-trial order that Guaranty Bank voluntarily released its lien on this vehicle when he sold it to a third party. There was no contradictory evidence introduced to refute Mills' version. However, in the pre-trial order at paragraph 7.b.(c), Mills indicated that he did sell the 2006 Delta marsh boat for approximately $9,000.00, and failed to remit the proceeds to Guaranty Bank. Therefore, the court is of the opinion that the value of this boat, i.e., $9,000.00, represents a non-dischargeable debt related to this particular loan. The court is further of the opinion that Guaranty Bank should file a motion seeking relief from the automatic stay and abandoning the remaining two items of collateral that secured this loan, i.e., the 24' Rivertrail trailer and the 2006 Yamaha OD. If Guaranty Bank elects not to take this action, then the balance of this loan shall be considered a discharged debt.

A separate order, consistent with this opinion, summarizing the findings and conclusions herein, will be entered contemporaneously herewith.

This the 9th day of September, 2011.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE